OPINION OF THE COURT
Robert J. Stolarik, J.
This is a motion by the plaintiff husband for an order striking the defendant wife’s interrogatories on the grounds that all financial issues between the parties have been resolved by the terms of an existing separation agreement.
Plaintiffs commenced this action for divorce on February 12,1981 following the execution of a separation agreement dated January 30, 1981. Neither party has provided the court with a copy of the complaint but defendant’s answer contains a counterclaim for a divorce based on cruel and inhuman treatment and seeks to set aside the separation agreement on the grounds of fraud, misrepresentation, undue influence and duress and also seeks to set aside the separation agreement on the grounds that its maintenance provisions are violative of section 5-311 of the General *804 Obligations Law. (Domestic Relations Law, § 236, part B, subd 3, par [3].) The terms of the January 30,1981 separation agreement purport to resolve all financial issues between the parties.
In a pre-equitable distribution action (Domestic Relations Law, § 236, part A), where a counterclaim exists to set aside the separation agreement, the courts have held that financial disclosure is not available unless and until the separation agreement has been set aside. (Shiftman v Shiftman, 57 AD2d 519, 520; Gleeson v Gleeson, 69 AD2d 964, mot for lv to app dsmd 47 NY2d 709.)
The question presently before the court is whether the equitable distribution amendments to the Domestic Relations Law should warrant a departure from the holdings in Shiftman (supra) and Gleeson (supra). Otherwise stated, should the court permit financial disclosure prior to the setting aside of the separation agreement in an equitable distribution action? In the absence of any controlling precedent and, based upon the substantive provisions of the equitable distribution amendments, the court answers this question in the affirmative.
The basis for the court’s decision centers around the substantially different status the separation agreement (as it applies to maintenance) enjoys under equitable distribution. More particularly, section 236 (part B, subd 9, par b) of the Domestic Relations Law provides that: “Upon application by either party, the court may annul or modify any prior order or decree as to maintenance * * * upon a showing of the recipient’s inability to be self-supporting or a substantial change in circumstance, including financial hardship. Where, after the effective date of this part, a separation agreement remains in force no modification of a prior order or decree incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the-decree or order as modified shall supersede the terms of the prior agreement and decree for such period of time and under such circumstances as the court shall determine.” (Emphasis supplied.)
The intent of this provision is to permit the court to suspend or modify the agreement in situations where the *805 agreement has not merged, “for as long as necessary and to what extent necessary and, thus, preclude a contract claim.” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, C236B:28, 1981-1982 Pocket Part, pp 105-106.) Otherwise stated, if the court is persuaded to suspend or modify the terms of the separation agreement by granting a downward modification or suspension of the maintenance provisions, the adverse party would be precluded from bringing a contract action to recover the difference between the modified/suspended sum and the sum specified in the separation agreement. Under the pre-equitable distribution law, the contract cause of action would still be available to recover those sums of money which were provided for by the original terms of the separation agreement. (Goldman v Goldman, 282 NY 296.) Under the old law, the parties were strictly bound by the terms of a separation agreement which were nonmodifiable with respect to alimony (Galusha v Galusha, 116 NY 635; Schmelzel v Schmelzel, 287 NY 21; Goldman v Goldman, supra), absent the “public charge” exception of McMains v McMains (15 NY2d 283). Clearly, in this area, the Legislature has demonstrated an intent to disregard the pre-equitable distribution contractual “straight jacket” which formerly attached to the maintenance provisions of the separation agreement.
Section 236 (part B, subd 3, par [3]) of the Domestic Relations Law also appears to evidence a legislative intent to change the status of the separation agreement insofar as it relates to maintenance provisions. “Agreement of the parties. An agreement by the parties * * * may include * * * (3) provision for the amount and duration of maintenance * * * subject to the provisions of section 5-311 of the general obligations law, and provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment” (emphasis supplied). Pre-equitable distribution, the court could only determine whether the separation agreement was unconscionable when made or otherwise the result of fraud, undue influence, duress or overreaching at the time of execution. (Christian v Christian, 42 NY2d 63; Perry v Perry, 64 AD2d 625.) The equitable *806 distribution statute has now introduced a new test of “fairness” and requires the court to consider all 10 statutory factors which must be considered in making any maintenance award. (Domestic Relations Law, § 236, part B, subd 6; Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, C236B:5, 1981-1982 Pocket Part, p 79.) In addition, the court must also determine whether the agreement is “unconscionable” at the time of entry of final judgment, a criterion which was not considered under the pre-equitable distribution cases. Apparently, the legislative intent here was to permit the court to determine whether a change of circumstances had occurred since the execution of the separation agreement which would warrant the court in rewriting the parties’ contract by imposing different maintenance provisions. (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, C236B:5,1981-1982 Pocket Part, p 79.) It would appear that “the Court now has the power to relieve parties of bad bargains as well as bargains that may have been fair and reasonable when made, but have become unconscionable solely as a result of a change of circumstances of the parties not contemplated by the parties at the time the agreement was entered into.” (Equitable Distribution Reporter, Equitable Distribution Under the New Law in New York State, Panel Publishers, 1980.)
The inclusion of these two new criteria (“fair and reasonable” at the time of execution and not “unconscionable” at the time of entry of judgment) in section 236 (part B, subd 3, par [3]) of the Domestic Relations Law clearly evidences a legislative intent to expand the court’s role in considering the maintenance provisions of the separation agreement from the limited scope of inquiry to which the preequitable distribution separation agreement was subject. In the final analysis, it would appear that the Legislature intended to liberalize the overbearing “straight-jacket” which contract law imposed on any court determinations with respect to the fairness, modification and enforcement of separation agreements. The provisions of a separation agreement, insofar as they relate to maintenance, are no longer rigidly enforced and the parties are no longer bur *807 dened by the classical “contractual analysis” which chained them to the terms of their agreement, virtually forever. The very inclusion of section 236 (part B, subd 3, par [3]) of the Domestic Relations Law is indicative of this intent. Clearly, if the court is required to make these determinations (“fair and reasonable at * * * time of [execution]” and “not unconscionable at the time of entry of * * * judgment”), it would follow that pretrial disclosure as to finances is absolutely necessary.
The court finds that the policy reasons for the holdings in Shiffman (57 AD2d 519, supra) and Gleeson (69 AD2d 964, supra), namely, to underscore and enforce the sanctity of the separation agreement as a contract, no longer exist when the court has focused its attention on the maintenance provisions of a separation agreement in an equitable distribution situation.
The plaintiff is directed to serve interrogatories within 20 days of the date of service of a copy of this decision and order with notice of entry thereof.